**BECTON, DICKINSON AND COMPANY, Plaintiff and Counter–Defendant,**

v.

**BAXTER INTERNATIONAL, INC., Defendant and Counter–Plaintiff.**

Cause No. 1–14–CV–222–LY.

United States District Court, W.D. Texas, Austin Division.

Signed Aug. 3, 2015.

Daniel H. Brean, Kent E. Baldauf, Jr., The Webb Law Firm, Pittsburgh, PA, for Plaintiff and Counter–Defendant.

Kacy Dicke, Sanjay K. Murthy, K&L Gates LLP, Michael J. Abernathy, Bell Byd & Lloyd LLC, Chicago, IL, Roderick

Bland Williams, K&L Gates, LLP, Austin, TX, for Defendant and Counter–Plaintiff.

### ORDER ON MOTION FOR SUMMARY JUDGMENT

LEE YEAKEL, District Judge.

Before the court in the above-styled and numbered cause are Defendant's Motion for Summary Judgment of Invalidity Based on 35 U.S.C. § 101 filed December 9, 2014 (Clerk's Doc. No. 47), Plaintiff's Response to Defendant's Motion filed January 15, 2015 (Clerk's Doc. No. 55), Defendant's Reply in Support of Its Motion filed January 26, 2015 (Clerk's Doc. No. 56), Plaintiff's Notice of Supplemental Authority filed February 3, 2015 (Clerk's Doc. No. 57), and Defendant's Response to Plaintiff's Notice of Supplemental Authority filed February 6, 2015 (Clerk's Doc. No. 59). The court held a hearing on the summary-judgment motion on March 23, 2015, at which both parties appeared through counsel.

After considering the motion, responses, reply, supplemental authority, arguments of counsel, the patent-in-suit, the entire case file, and the applicable law, the court will grant Defendant's motion for summary judgment of invalidity.

## I. BACKGROUND

Plaintiff Becton, Dickinson and Company ("Becton")[1] brings this suit against Defendant Baxter International, Inc. ("Baxter"), alleging infringement of United States Patent No. 8,374.887 (the "'887 Patent"). Baxter contends that the asserted claims of the '887 Patent are invalid under Chapter 35, United States Code Section 101 ("Section 101") for failing to claim patentable subject matter. Specifically,

---

1. On December 9, 2014, this court granted Becton's unopposed motion to substitute Becton for inventor and original Plaintiff Emily H. Alexander. Effective October 24, 2014, Becton acquired "all right, title, and interest" to the patent-in-suit and the "sole and exclusive right to replace Alexander as the Plaintiff and Counter–Defendant in this litigation."

Baxter contends that the asserted claims are directed to the abstract idea of "supervision and verification," and that the addition of "generic technology claimed to implement the abstract idea" fails to provide the required "inventive concept" necessary to "transform the claimed abstract idea into a patent-eligible application." *Alice Corp. Pty. Ltd. v. CLS Bank, Int'l*, —— U.S. ——, 134 S.Ct. 2347, 2358, 189 L.Ed.2d 296 (2014).

 In addition to opposing the motion on substantive grounds, Becton argues that this court should postpone judgment on Baxter's motion until after claim construction.[2] The court disagrees. "Although the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter, claim construction is not an inviolable prerequisite to a validity determination under § 101." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1349 (Fed.Cir.2014) (citing *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714–15 (Fed.Cir.2014)); *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1273–74 (Fed.Cir.2012) (finding that district court did not err by declaring claims patent-ineligible at pleading stage without first construing claims or allowing parties to conduct fact discovery and submit opinions from experts supporting their claim-construction positions). The court concludes that the asserted claims are drawn to an abstract idea, and there is no reasonable construction of any term that would bring these claims within the bounds of patentable subject matter. Therefore, this court's Section 101 analysis is appropriate at this stage of the litigation.

## A. The '887 Patent

According to the abstract, the '887 Patent is generally directed toward "a method and a system for remotely supervising and verifying technical pharmacy functions performed by a non-pharmacist located in an institutional pharmacy." The invention is summarized as "providing certain pharmacy services to institutionalized patients at an institution where a live pharmacist is not available" such that an "institutional pharmacy and a remotely located pharmacist are linked via wired or wireless telecommunication systems in a manner that enables the pharmacist to remotely supervise and verify that pharmacy functions are properly performed by non-pharmacist personnel." '887 Patent 2:13–20.

 Claim 1 of the '887 Patent is representative for the purposes of the court's Section 101 analysis:[3]

---

2. The parties' claim-construction briefing, joint corrected claim-construction statement, and Baxter's notice of intervening claim-construction authority are also before the court. Additionally, the court held a claim-construction hearing on November 24, 2014. The court is familiar with the parties' claim-construction positions and disputed claim terms.

3. Having thoroughly reviewed the '887 Patent and all of its associated claims, the court agrees with Baxter that Claim 1 is representative. Where claims are "substantially similar and linked to the same abstract idea," the court may dispose of the other claims in the patent with less detail. *Content Extraction & Transmission, LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed.Cir.2014). Despite Becton's arguments to the contrary, the dependent claims of the '887 Patent introduce only slight variations of the independent claims, variations which do not change the validity calculus; thus the court need not consider each claim distinctly. *See Id.* at 1349 ("[W]hile [the dependent] claims may have a narrower scope than the representative claims, no claim contains an 'inventive concept' that transforms the corresponding claim into a patent-eligible application of the otherwise ineligible abstract idea."); *see also Planet Bingo, LLC v. VKGS LLC*, 576 Fed. Appx. 1005, 1007 (Fed.Cir.2014) (unpublished decision).

1. A method for remote supervision and verification of pharmacy functions that are performed by a non-pharmacist person, comprising:

in response to performance, by a non-pharmacist person, of pharmacy work to prepare a medication at an institutional pharmacy, wherein the pharmacy work requires pharmacist verification of the pharmacy work, wherein performing the pharmacy work comprises the non-pharmacist person performing, at a workstation in the institutional pharmacy, a sterile compounding process to prepare the medication, wherein the medication is compounded from a plurality of material components at the workstation within the institutional pharmacy:

capturing, via an image capture device at the workstation in the institutional pharmacy, one or more images of the pharmacy work performed by the non-pharmacist person as the work is performed by the non-pharmacist person at the institutional pharmacy, wherein at least one of the images is an image of the sterile compounding process performed by the non-pharmacist person that requires verification by a pharmacist for medications to be placed into pharmacy stock;

implementing verification software, via one or more computers at the institutional pharmacy, to remotely verify the work performed by the non-pharmacist person, wherein remote verification of the work performed by the non-pharmacist person comprises: transmitting the one or more images captured by the image capture device of the sterile compounding process performed by the non-pharmacist person at the workstation to a remote pharmacist for review, wherein said transmitting the one or more images comprises storing the images on a website; receiving an indication of the remote pharmacist's verification of the correct performance of the sterile compounding process by the non-pharmacist person; and

providing, in response to the indication of the remote pharmacist's verification, an indication at the institutional pharmacy that the remote pharmacist has verified the sterile compounding process performed by the non-pharmacist person.

'887 Patent 17:37–18:10. Independent Claim 16, the only other independent claim in the '887 Patent, recites the elements of Claim 1, with the exception of the images stored on a website, and adds one additional requirement:

wherein capturing the one or more images comprises capturing two or more images of the sterile compounding process of the sterile compounded medications as the sterile compounded medications are prepared, wherein at least one of the two or more images is captured at a different stage of the compounding of the sterile compounded medications than at least one other of the two or more images;

*Id.* at 19:38–45.

## II. DISCUSSION

Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if all the submissions of the parties taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal citation and quotation marks omitted); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears the initial burden of demonstrating "the absence of a

genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. Mere conclusory allegations are not competent summary judgment evidence and are insufficient to defeat a motion for summary judgment. *Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir.1996). A court must draw all reasonable inferences in favor of the non-moving party. *BMC Res., Inc. v. Paymentech, L.P.,* 498 F.3d 1373, 1378 (Fed. Cir.2007).

◼◼◼◼ "Whether a claim is drawn to patent-eligible subject matter under [Section] 101 is a threshold inquiry[.]" *In re Bilski,* 545 F.3d 943, 950 (Fed.Cir.2008) (*"Bilski I"*), affirmed sub nom. *Bilski v. Kappos,* 561 U.S. 593, 130 S.Ct. 3218, 177 L.Ed.2d 792 (2010) (*"Bilski II"*). If a claim is not drawn to patent-eligible subject matter, it "must be rejected even if it meets all the other legal requirements of patentability." *Id.* The determination of whether a claim is drawn to patent-eligible subject matter is a pure question of law. *See Fort Properties, Inc. v. Am. Master Lease LLC,* 671 F.3d 1317, 1320 (Fed.Cir. 2012); *see also Bilski I,* 545 F.3d at 951 (explaining that patent validity under Section 101 is "issue of law").

Section 101 of the Patent Act defines patentable subject matter: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. However, Section 101 also "contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice,* 134 S.Ct. at 2354 (internal quotations and citation omitted). "[T]he concern that drives this exclusionary principle [is] one of pre-emption." *Id.* (citing *Bilski II,* 561 U.S. at 611, 130 S.Ct. 3218).

The Supreme Court has stressed the need to "tread carefully in construing this exclusionary principle lest it swallow all of patent law. At some level, all inventions embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas. Thus, an invention is not rendered ineligible for patent simply because it involves an abstract concept." *Alice,* 134 S.Ct. at 2354 (internal citations omitted).

In order to guide courts in this inquiry, the Supreme Court established a "framework for distinguishing patents that claim ... abstract ideas from those that claim patent-eligible applications of those concepts. First, we determine whether the claims at issue are directed to one of those patent-ineligible concepts. If so, we then ask, 'what else is there in the claims before us?' ... to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* at 2355 (internal citations omitted). Step two of the analysis is a "search for an 'inventive concept'—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* (internal quotations and citations omitted).

## A. Application of the Two–Step *Alice* Framework to the '887 Patent

◼◼◼ Broadly speaking, Baxter argues that all the asserted claims of the '887 Patent fall outside Section 101 eligibility because they teach the "abstract ideas of 'supervision' and 'verification' of pharmacy functions." According to Baxter, "[s]upervision and verification are even more fundamental 'building blocks of human ingenuity' than the' intermediated settlement'" patent which was found patent ineligible in *Alice.* Moreover, Baxter argues, the '887 Patent's "addition of 'off-the-shelf technol-

ogy does not add the required inventive concept'" necessary in a Section 101 analysis. Baxter argues that none of the method steps contain the required inventive concept "in the physical realm of things" necessary to transform an abstract idea into a patent-eligible invention. Baxter asserts that "[t]aken individually and as a whole, the independent claims do nothing more than recite a series of conventional steps carried out using basic camera and computer functions." Finally, Baxter argues that the patent's field-of-use limitation of "sterile compounding for medications to be placed into pharmacy stock" is not transformative and does not render the claims patent eligible.

In response, Becton argues that the claims are not merely directed at the abstract concept of supervision and verification because they recite additional "substantial structural elements" and "particularized implementations of the inventive concept in a specific sequence." Becton contends that Baxter's characterization of the thrust of the patent is oversimplified and that the claims go "far beyond the bare concepts of 'supervision and verification.'" Becton also argues that the '887 Patent is not abstract because the Supreme Court has limited the abstractness inquiry to "only ... a handful of subject matter areas ... including implementing purely mental activities, mathematical or economic principles, business practice, or algorithms on a generic computer." Thus, contends Becton, because the '887 Patent's claims recite "hardware components," the subject matter of the '887 Patent "goes far beyond 'simply stat[ing] the [abstract idea] while adding the words 'apply it.'" (Becton's citations omitted). The crux of Becton's argument, therefore, is that "the claims of the '887 Patent, when considered as a whole, reflect a specific application of a remote sterile compounding supervision and verification process, not impermissibly abstract fundamental concepts or longstanding practices."

Becton further argues that, even if the claims encompass an abstract idea, they also "add 'significantly more' and provide an 'inventive concept.'" Becton contends that Baxter's motion ignores material limitations which "reflect a significant inventive concept" beyond supervision and verification. Becton also argues that Baxter's motion "fails to consider the claim elements as an ordered combination" and urges the court that the '887 Patent's claims are eligible because they "do[ ] not preempt use of those abstract ideas generally or in the field of pharmacy." In essence, Becton argues that the patent is directed only to *remote* supervision and verification, not supervision and verification as a generalized concept throughout the pharmacy industry.

### 1. The '887 Patent's Claims are Directed Toward a Patent–Ineligible Concept

Despite Becton's vigorous argument that the claims' "structural elements" and "particularized implementations" show that the '887 Patent is not directed at an abstract idea, the court disagrees. After stripping away the technicalisms and superfluous verbiage from the claims' language,[4] it is evident that the gist of the claims, and indeed the entire aim of the patent, involves a pharmacist supervising and verifying the work of a nonpharmacist to ensure the work's accuracy. The steps delineated in the claim describe a particular way of performing this process, but, at base, the claims are directed to this core idea. The "capturing" of an image, "im-

4. The '887 Patent's prolix claims exemplify an overly obtuse style of drafting which is all too common in many of the patents this court reviews.

plementing" verification software, "transmitting" the image, and "providing" an indication that the process has been verified are merely steps in the supervision and verification process; the claims do not present a concept or idea that is any more concrete than supervision and verification. It is undeniable that supervision and verification of a nonpharmacist's work is an abstract idea, one that amounts to a fundamental concept and longstanding practice of organizing human behavior applicable to many fields, one of which is pharmacy. The fact that the pharmacist is "remote" is of no added consequence to the abstract nature of the concept. Thus, the court concludes that, because the '887 Patent's claims are drawn to an abstract concept—supervision and verification—the patent is ineligible under the first step of the *Alice* inquiry.

## 2. No Additional Elements are Sufficient to Transform the Nature of the Claims

Under the second step of the *Alice* inquiry, even if a patent attempts to claim an otherwise abstract idea, the claim can be transformed into something patentable if it incorporates an inventive concept, defined by the Supreme Court as "an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Alice*, 134 S.Ct. at 2355.

Becton urges the court that the claims' additional limitations and the unique ordered combination of these limitations constitute an inventive step that transforms the claim from abstract to patentable. Specifically, Becton characterizes the inventive limitations of Claim 1 to be "(1) supervising sterile compounding (2) performed by a nonpharmacist person (3) through use of an image capture device and (4) verification software that (5) provides for transmission and (6) storage of (7) one or more images of sterile compounding process·(8) captured as that process is being performed, and also includes (9) providing an indication that the pharmacist has in fact verified the same."

The court disagrees. Becton argues that the patent recites hardware components "such as an image capture device and a computer running specially-programmed software" to perform the claimed invention. Examining the claims closely, as both containing individual elements and as an ordered combination, it is inescapable that the claims use generic, off-the-shelf technology applied in a conventional way to achieve the aim of the patent. The patent does not describe a novel sterile compounding process, a new type of image-capture device, or a particularized website or software program to perform any step. The claims and specification instead teach well-known elements used in conventional ways combined to perform the steps of supervision and verification. The court can find no inventive concept in any of the claim language that "amounts to significantly more" than a detailed description of conventional, if generic, steps of remotely supervising and verifying the work of a nonpharmacist who is preparing prescriptions. *Id.*

Becton does not, and cannot, argue that the computer elements, capture device, network infrastructure, or supporting software described in the claims are in themselves new inventions. Although the elements' use in the "remote pharmacy" setting is characterized by Becton as a breakthrough, the actual technological components are described only in generic terms, the technical details of which are not described. "Wholly generic computer implementation is not generally the sort

of additional feature that provides any practical assurance that the process is more than a drafting effort designed to monopolize the abstract idea itself." *Alice,* 134 S.Ct. at 2350–51. Becton's reliance on *DDR Holdings, LLC v. Hotels.com, L.P.* is misplaced; Becton cannot convincingly argue that the '887 Patent "overcome[s] a problem specifically arising in the realm of computer networks" or, in this case, the pharmacy industry. 773 F.3d 1245, 1257 (Fed.Cir.2014). Rather than having created a technological innovation, the patent seeks merely to apply existing technology to the abstract and arguably age-old process of supervising and verifying the work of a nonpharmacist.

Accordingly, the court concludes that the '887 patent, as a whole, fails to demonstrate the necessary inventiveness to transform the claimed invention and overcome the fact that the patent's claims are drawn to an impermissibly abstract idea.

**IT IS THEREFORE ORDERED** that Defendant Baxter International Inc.'s Motion for Summary Judgment of Invalidity Based on 35 U.S.C. § 101 (Clerk's Doc. No. 47) is **GRANTED.** The '887 Patent claims asserted in this action are **INVALID** under Chapter 35, United States Code Section 101.