NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**DOUGLAS MAURICE SHORTRIDGE,**
*Plaintiff-Appellant*

**v.**

**FOUNDATION CONSTRUCTION PAYROLL SERVICE, LLC, DBA PAYROLL4CONSTRUCTION.COM, FOUNDATION SOFTWARE, INC., ASSOCIATED BUILDERS AND CONTRACTORS, INC.,**
*Defendants-Appellees*

---

2015-1898

---

Appeal from the United States District Court for the Northern District of California in No. 3:14-cv-04850-JCS, Magistrate Judge Joseph C. Spero.

---

Decided: July 13, 2016

---

DOUGLAS MAURICE SHORTRIDGE, Napa, CA, pro se.

DANIEL MCMULLEN, Calfee, Halter & Griswold LLP, Cleveland, OH, for defendants-appellees. Also represented by VERONICA LAMBILLOTTE, JENNIFER BUCKEY WICK.

---

Before O'MALLEY, LINN, and STOLL, *Circuit Judges.*

PER CURIAM.

Douglas M. Shortridge appeals the United States District Court for the Northern District of California's determination that U.S. Patent No. 8,744,933 claims ineligible subject matter under 35 U.S.C. § 101. Because Mr. Shortridge concedes that the '933 patent claims are directed to an abstract idea and because the claims recite nothing more than conventional steps beyond the abstract idea, we affirm.

## BACKGROUND

Mr. Shortridge is the named inventor of the '933 patent, which relates generally to:

> [a] computer implemented business method and process directed to enabling a public works contractor employer . . . to[] generate certified payroll records . . . ; provide alerts and reports . . . ; provide evidence of meeting and exceeding government objectives in order to establish a record and reputation of compliance; and generate reports for managing the assignment of personnel to enhance worker cooperation, spirit, and morale.

'933 patent Abstract. The '933 patent explains how many jurisdictions mandate that public works construction contractors pay their workers certain minimum wages, but that the exact amount that must be paid varies depending on work location and the specific type of work performed. Contractors must verify to the governing jurisdiction(s) that they have paid these wages using "certified payroll records" ("CPRs"). "CPRs are intended to serve as prima facie evidence of the wages paid and any fringe benefit contributions made, to or on behalf of each worker on the project, broken down by craft, type, or classification of work, per hour, and per day, along with

various information items related to the project, the awarding body, and the employees working thereupon." *Id.* col. 1 ll. 41–48. The content, format, and configuration requirements of CPRs may vary by jurisdiction, which can complicate CPR generation for contractors whose employees work across public works projects in different jurisdictions, or between public works and private projects, in a given pay period. The '933 patent claims a method of processing payroll such that CPRs for the relevant jurisdiction(s) are generated "in conjunction with and simultaneous with core payroll processing." *Id.* col. 18 ll. 62–63.

The '933 patent has three independent claims—claims 1, 12, and 20. Claim 1 of the '933 patent recites:

1. A method of public works construction payroll processing for a contractor comprising:

processing payroll related data with a computer implemented core payroll calculation and processing engine, the processing including:

sharing between conjoined computer processor components, input data stored in a relational database, said input data required for core payroll processing and calculation, said input data also required for production of at least one certifiable public works construction payroll record report (CPR), the CPR defined in accordance with jurisdiction-specific rules drawn from a plurality of stored rules;

distinguishing between public works projects and private sector projects based on the input data and identifying the project as a public works project based on the input data;

verifying input data is compliant with requirements of the core payroll processing and calculation engine and the requirements of the CPR;

processing the verified input data to produce calculated core payroll data, the calculated core payroll data used for core payroll processing, production of core payroll processing reports, and production of the CPR;

sharing, between conjoined computer processor components, the calculated core payroll data;

sharing, between the conjoined computer processor components, non-calculated payroll related data as required for production of the CPR;

storing the non-calculated payroll related data and the calculated core payroll data redundantly or individually;

producing the CPR based on the calculated core payroll data and the non-calculated payroll related data only if the input data identifies the project as a public works project, the CPR produced in conjunction with and simultaneously with core payroll processing; and

producing public works contractor management supporting reports using the input data only if the input data identifies the project as a public works project, the public works contractor management supporting reports indicating whether the contractor is in compliance with the jurisdiction-specific rules of a jurisdiction to which the public works construction contractor is subject.

*Id.* col. 18 l. 27 – col. 19 l. 4.  Claim 12 recites:

12. A system for public works construction contractor payroll processing comprising:

a computer processor, or a networked plurality of computer processors, configured with:

computer readable instructions;

at least one data base application;

at least one user interface;

binary and application programming interfaces;

a core payroll calculation and processing engine configured to perform payroll calculation and processing and produce calculated core payroll data; and

an augmentation and supporting engine for public works payroll processing operating in conjunction with the core payroll calculation and processing engine and configured to produce certifiable public works payroll records and reports in conjunction with and simultaneously with the payroll calculation and processing performed by the core payroll calculation and processing engine, the augmentation and supporting engine including a plurality of relational tables, at least one relational table configured to distinguish between private sector and public works projects, the augmentation and supporting engine configured to receive the calculated core payroll data and use the calculated core payroll data in the production of the certifiable public works payroll records, wherein the augmentation and supporting engine is configured to produce the certifiable public works payroll records and reports for a project only if the at least one relational table identifies the project as one of the public works projects, the certifiable public works payroll records and reports for the project produced in accordance with jurisdiction-specific rules drawn from a plurality of stored rules.

*Id.* col. 19 l. 60 – col. 20 l. 26.[1]

Mr. Shortridge asserted the '933 patent against Foundation Construction Payroll Service, LLC in the district court. In response, Foundation moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, arguing that the '933 patent is not eligible for patent protection under § 101 of the Patent Act. The district court first determined that the '933 patent fails step one of the § 101 eligibility test articulated by the Supreme Court in *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S. Ct. 1289 (2012), and *Alice Corp. v. CLS Bank International*, 134 S. Ct. 2347 (2014), as the claims are directed to the abstract idea of "cataloging labor data." *Shortridge v. Found. Constr. Payroll Serv., LLC* (*Dist. Ct. Op.*), No. 3:14-cv-4850-JCS, 2015 WL 1739256, at *10 (N.D. Cal. Apr. 14, 2015). The district court second found that the claims fail step two of the *Alice* test as they do not contain an inventive concept that transforms the claims into patent-eligible subject matter. Having determined that the '933 patent claims fail to satisfy the two-step test for § 101 eligibility, the district court dismissed Mr. Shortridge's infringement suit.

Mr. Shortridge appeals, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

---

[1] We do not reproduce claim 20, as Mr. Shortridge concedes that it "cover[s] the same scope" as claim 1. Appellant Br. 21. Also, Mr. Shortridge has not argued any of the dependent claims separately, so we treat independent claims 1 and 12 as representative.

DISCUSSION

I.

We review de novo whether a claim is drawn to patent-ineligible subject matter. *Enfish, LLC v. Microsoft Corp.*, No. 15-1244, 2016 WL 2756255, at *3 (Fed. Cir. May 12, 2016) (citing *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015), *cert. denied*, 136 S. Ct. 701 (2015)). Section 101 defines patent-eligible subject matter as "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. The Supreme Court has "long held that this provision contains an important implicit exception. Laws of nature, natural phenomena, and abstract ideas are not patentable." *Mayo*, 132 S. Ct. at 1293 (2012) (internal quotation marks, brackets, and citations omitted).

To determine whether a patent claims ineligible subject matter, we apply the now-familiar two-step test introduced in *Mayo*, *id.* at 1296–97, and further explained in *Alice*, 134 S. Ct. at 2355. First, we determine whether the claims at issue are directed to a patent-ineligible concept such as an abstract idea. *Alice*, 134 S. Ct. at 2355. Second, we look at the claims for "something more" by "examin[ing] the elements of the claim to determine whether it contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Id.* at 2354, 2357 (quoting *Mayo*, 132 S. Ct. at 1294, 1298). This inventive concept must do more than simply recite "well-understood, routine, conventional activity." *Mayo,* 132 S. Ct. at 1298.

## II.

The district court determined that the '933 patent is directed to the abstract idea of "cataloging labor data."[2] Appearing at a hearing before the district court, Mr. Shortridge did not dispute that the '933 patent is directed to "one or more" abstract idea(s) and instead argued that step two of the *Alice* inquiry is "where the whole question is, and that's what the whole argument is about." Tr. of 12(c) Mot. Hr'g at 5, *Shortridge v. Found. Constr. Payroll Serv., LLC*, No. 3:14-cv-4850-JCS (N.D. Cal. Apr. 3, 2015), ECF No. 80. Thus, as Mr. Shortridge has conceded that the '933 patent is directed to an abstract idea (or ideas) and has not urged our adoption of a different abstract idea (or ideas), we begin our analysis at step two of the *Alice* framework.

The '933 patent describes "a computer implemented business method." '933 patent Abstract. Mr. Shortridge acknowledges that generation of CPRs using core processing data is a business method predating the '933 patent: "CPRs can *always* be created *after* the core payroll process is 100% complete." Appellant Br. 14. Indeed, the '933 patent itself explains that often "multiple calculations involving varying time and hourly rate of pay . . . must be manually tracked and reported by [a contractor] in order to meet government requirements for creating and submitting CPRs on Public Works projects when CPRs are required at the highest CPR-criteria content standard." '933 patent col. 4 ll. 28–49. The '933 patent's use of a general purpose computer to perform this busi-

---

[2]   Mr. Shortridge asserts that the district court found the '933 patent directed to several varying abstract ideas, which he argues was improper. We disagree. The district court's opinion merely uses slightly different wording to refer consistently to the same basic abstract idea of "cataloging labor data."

ness method does not in and of itself render it patent-eligible. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 717 (Fed. Cir. 2014), *cert. denied*, 135 S. Ct. 2907 (2015) ("[A]dding a computer to otherwise conventional steps does not make an invention patent-eligible.") (citing *Alice*, 134 S. Ct. at 2357); *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1279 (Fed. Cir. 2012) ("Using a computer to accelerate an ineligible mental process does not make that process patent-eligible.").

What Mr. Shortridge relies on most heavily as the step-two inventive concept is the generation of CPRs "in conjunction with and simultaneous with" core payroll processing. Appellant Br. 11–13 (quoting '933 patent col. 18 ll. 62–63, col. 20 ll. 8–9, col. 22 l. 4). We disagree that this feature imparts patent eligibility. As disclosed in the specification and recited in the plain claim language, the '933 patent claims generating CPRs in conjunction with and simultaneous with core payroll processing simply by applying computer elements such as relational databases. The district court found, and Mr. Shortridge does not argue to the contrary, that the computer components contemplated by the '933 patent were conventional and known to the industry at the time of the patent. *Dist. Ct. Op.*, 2015 WL 1739256, at *12. While it may be true that, as Mr. Shortridge argues, a human could not easily process core payroll while simultaneously generating CPRs, "relying on a computer to perform routine tasks more quickly or more accurately is insufficient to render a claim patent eligible." *OIP*, 788 F.3d at 1363 (citing *Alice*, 134 S. Ct. at 2359). Further, when faced with the claims at issue in *Alice*, the Supreme Court indicated that "use of a computer to create electronic records, track multiple transactions, and issue *simultaneous* instructions" was not an inventive concept. *Alice*, 134 S. Ct. at 2359 (emphasis added). This same logic applies to the claims at issue here.

Mr. Shortridge also argues that the '933 patent's "'one size fits all' algorithm constitutes the inventive concept in this case" and that "[t]his is the 'something more' under *Alice*." Reply Br. 8. We also find this argument unpersuasive because "[w]ithout additional limitations, a process that employs mathematical algorithms to manipulate existing information to generate additional information is not patent eligible." *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1351 (Fed. Cir. 2014). It is also not enough that the claims specifically describe the algorithm as being for public works projects across multiple jurisdictions because "limiting an abstract idea to one field of use . . . d[oes] not make the concept patentable." *Bilski v. Kappos*, 561 U.S. 593, 612 (2010); *see also Digitech*, 758 F.3d at 1351 ("If a claim is directed essentially to a method of calculating, using a mathematical formula, even if the solution is for a specific purpose, the claimed method is nonstatutory." (quoting *Parker v. Flook*, 437 U.S. 584, 595 (1978))).

Finally, Mr. Shortridge argues that his patent is similar to the patent we held to be subject matter eligible in *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014). Specifically, Mr. Shortridge notes that the '933 patent claims recite the use of a "relational database," *e.g.*, '933 patent col. 18 l. 33, and, similarly, that the claims at issue in *DDR* recite a "data store," 773 F.3d at 1250. But as the similarities between the patents end there, so too does Mr. Shortridge's argument. Our decision in *DDR* did not hinge on the patent's recitation of a data store, but rather on the notion that the "claimed solution [was] necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *DDR*, 773 F.3d at 1257. Here, Mr. Shortridge does not argue, and the '933 patent written description does not support, that the claimed "relational database" is used to solve a uniquely technical problem. Rather, the '933 patent claims are akin to those

*DDR* describes as "directed to nothing more than the performance of an abstract business practice . . . using a conventional computer." *DDR*, 773 F.3d at 1256; *see* '933 patent Abstract (describing patent as "[a] computer implemented business method"). As *DDR* instructs, "[s]uch claims are not patent-eligible." *DDR*, 773 F.3d at 1256.

Thus, after examining the claims of the '933 patent in search of an inventive concept adding "something more" to the underlying abstract idea of "cataloging labor data," we conclude that there is no such inventive concept claimed in the patent either by considering the claim limitations individually or as an ordered combination.

## CONCLUSION

We have considered Mr. Shortridge's remaining arguments and find them unpersuasive. For the forgoing reasons, we affirm both the decision of the district court that the claims of the '933 patent recite patent-ineligible subject matter under § 101 and the district court's dismissal of Mr. Shortridge's infringement suit.

## **AFFIRMED**

### COSTS

No costs.