NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**IN RE: MARK ALFRED GREENSTEIN,**
*Appellant*

---

2019-1520

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. 14/088,593.

---

Decided: December 10, 2019

---

MARK ALFRED GREENSTEIN, Bethesda, MD, pro se.

JOSEPH MATAL, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, for appellee Andrei Iancu. Also represented by THOMAS W. KRAUSE, AMY J. NELSON.

---

Before NEWMAN, DYK, and REYNA, *Circuit Judges.*

NEWMAN, *Circuit Judge.*

Mark A. Greenstein appeals the decision of the Patent Trial and Appeal Board, affirming the examiner's rejection of all claims of United States Patent Application No.

14/088,593 ("the '593 application"). We affirm the Board's decision.[1]

## DISCUSSION

We review the Board's legal determinations de novo, and the factual findings underlying those determinations for support by substantial evidence, *In re Gartside,* 203 F.3d 1305, 1316 (Fed. Cir. 2000). A finding is supported by substantial evidence if a reasonable mind might accept the evidence as adequate to support the finding. *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Patent eligibility under 35 U.S.C. § 101 is a question of law that may contain underlying issues of fact. *See SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018).

The '593 application is directed to a computer-conducted method of "assigning and managing the rights to receive taxes when amounts are disbursed from tax-advantaged accounts for which a prior deduction has been received." '593 application at 18 (Abstract). The application explains that tax-deferred savings accounts, such as retirement accounts, allow contributions to the account to be made tax-free, with taxes payable on disbursements from the account. *Id.* at 2–3 (Detailed Description). The application describes the invention as a method of "providing for transferring the right to receive taxes due [w]hen such amounts are withdrawn from tax-deferred [accounts] in exchange for current consideration such as money." *Id*. at 3–4 (Detailed Description).

---

[1]    *Ex Parte Mark A. Greenstein*, 2018 WL 3951495 (P.T.A.B. July 31, 2018) ("Board Op."), *modified on reh'g* (Dec. 20, 2018) ("Reh'g Op.").

The following claim states the claimed method, not including proposed amendments after final rejection that were not entered:[2]

1. A method of using one or more computers to manage the sale of taxes received by reason of removal of amounts from tax-deferred vehicles, the method including a specification of the measure of the taxes which are sold;

using one or more computers to track amounts contributed to and withdrawn from such tax-deferred vehicles;

specifying adjustments to the measure of amounts owed to purchasers of taxes sold and owed to purchasers of taxes sold based on removal of amounts from tax-deferred vehicles;

adjusting the amount owed to purchasers of taxes received by reason of removal from tax-deferred vehicles to take account of subsequent withdrawals and contributions to the tax-deferred vehicles;

adjusting the amount payable of taxes which are sold to take account of subsequent withdrawals from and contributions to the tax-deferred vehicles;

---

[2] Mr. Greenstein states that he had submitted an amendment to the examiner that resolved the rejections under sections 101 and 112. The examiner refused to enter and consider the amendment, because it was presented after Mr. Greenstein filed his notice of appeal and did not comply with 37 C.F.R. §§ 41.33(a) and 1.116. However, the Board's initial decision recited claim 1 as proposed to be amended. After Mr. Greenstein requested reconsideration, the Board mentioned its error and stated that it was reviewing the original claim, which the Board reproduced in the reconsideration decision. The claim 1 shown herein is the unamended claim in the reconsideration decision.

> specifying an adjustment to take account of a change in tax rates;
>
> adjusting the amount owed to purchasers of such taxes to take account of any specified adjustment in tax rates;
>
> using one or more computers to divide the rights to receive the adjusted amount payable of such taxes sold into qualitatively different interests which provide rates of return based on factors which are different from each other;
>
> tracking the ownership of such different interests;
>
> receiving amounts payable of such taxes which amounts are adjusted to take account of withdrawals from and contributions to the tax-deferred vehicles;
>
> transferring the amounts due to the owners of the qualitatively different interests which provide rates of return based on factors which are different from each other.

Reh'g Op. at 2–3.

The examiner had rejected the claims on three grounds: under § 101 as directed to patent-ineligible subject matter, under § 112(b) as lacking definiteness, and under § 103(a) as obvious in view of cited references. The Board affirmed the rejections based on § 101 and § 112(b), and "summarily reversed" the rejection on § 103 for the reason that "the metes and bounds of the claim protection being sought cannot be reasonably ascertained. It would be improper, then, to speculate as to the meaning of the claims." Board. Op. at *9.

The Director states that "[a]ssigning rights to future tax payments is a fundamental economic practice and therefore an abstract idea." PTO Br. 6.

In *Alice Corp. Pty. Ltd. v. CLS Bank International*, 573 U.S. 208 (2014), the Court set forth a two-step analytical

guide to Section 101, whereby: "First, we determine whether the claims at issue are directed to one of those patent-ineligible concepts" such as abstract ideas, *id.* at 217, and if so, in order to determine whether an inventive step is present "we consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 78–79 (2012)). Precedent has further explained the need for an "inventive concept that renders the invention 'significantly more' than that ineligible concept." *BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018).

Applying these principles, the Board held that the '593 application claims met the first step and are directed to an abstract idea, for "[e]xchanging consideration for a right to receive future payments, as well as managing the amounts of those future payments, is a fundamental business practice, long prevalent in our system of commerce." Board Op. at *5. The Board found that the claims "do no more than require generic computer elements to perform generic computer functions, rather than improve computer capabilities," *id.*, and that "[a]ppending various combinations of conventional computers is not enough to transform the idea into a patent-eligible invention," *id.*

The Board responded to Mr. Greenstein's argument that the Board "d[id] not consider the specifics of the claims." Reh'g Op. at 4. The Board stated that "the various claim limitations related to management of payments, for example, track[ing] amounts, specifying adjustments, adjusting amounts, divid[ing] rights, tracking ownership, receiving amounts, transferring amounts, all can be performed by a human using pen and paper." *Id.* at 5. Mr. Greenstein on appeal states that the Board erred, for performance by pen and paper is not feasible.

Mr. Greenstein states that the Board erroneously analyzed the claims at a generalized abstract level, while ignoring critical detailed limitations such as the claim term "adjusting the amount owed to purchasers of taxes received by reason of removal from tax-deferred vehicles to take account of subsequent withdrawals and contributions to the tax-deferred vehicles." Reply Br. 5. He states that this use of a computer is an inventive concept, for a computer is essential to conduct of the claimed method, as in *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1278 (Fed. Cir. 2012) ("To salvage an otherwise patent-ineligible process, a computer must be integral to the claimed invention, facilitating the process in a way that a person making calculations or computations could not.").

Mr. Greenstein states that the Board erred in holding that these functions can be performed by hand calculation, for it would take years to do so. He argues that the claims recite using a computer to assign and manage the right to receive taxes when amounts are disbursed from tax-advantaged accounts for which a prior deduction has been received, including computerized records of contributions and withdrawals, with adjustment to take account of contributions and withdrawals. He states that these steps cannot reasonably be performed by pen and paper, for his method "require[s] millions of calculations within short periods of time," Greenstein Br. 3. He states that because it is critical to perform these functions quickly and accurately, doing so by computer is the only feasible way of conducting the method. He does not argue novelty of the method; he argues that the calculations cannot feasibly be performed without use of a computer.

The Director responds that "providing for calculations to 'be performed more efficiently via a computer does not materially alter the patent eligibility of the claimed subject matter.'" PTO Br. 11 (quoting *Bancorp Servs.*, 687 F.3d at 1278). The Director observes that "any alleged novelty in Greenstein's claimed tax-monetization system is irrelevant

to the question of subject matter eligibility." PTO Br. 8–9; *see id.* at 9 ("Even assuming [the claimed invention is novel], it does not avoid the problem of abstractness." (quoting *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1263 (Fed. Cir. 2016))).

The Board correctly applied precedent, and held that the complexity of this known method does not impart patentability to computer-implementation of the method. The rejection under Section 101 is affirmed; thus on this appeal we do not reach the issues raised by the rejections under Sections 112 and 103.

### AFFIRMED

No costs.