**POLARIS INNOVATIONS LIMITED, an Irish limited company, Plaintiff,**

v.

**KINGSTON TECHNOLOGY COMPANY, INC., a Delaware Corporation, Defendant.**

Case No.: SACV 16–00300–CJC(RAOx)

United States District Court, C.D. California, Southern Division.

Signed 07/21/2016

Alex H. Chan, Azra M. Hadzimehmedo-vic, Jonathan Gordon Tamimi, Robert

Lewis Gerrity, Steven S. Cherensky, Yi Chen, Matthew Douglas Powers, Tensegrity Law Group LLP, Redwood Shores, CA, Quincy Justin Chuck, Sterling Arthur Brennan, Maschoff Brennan Laycock Gilmore Israelsen and Wright PLLC, Irvine, CA, Richard A. Ripley, Pro Hac Vice, Robert F. Ruyak, Pro Hac Vice, RuyakCherian LLP, Washington, DC, for Plaintiff.

Christopher Kao, Brock S. Weber, Vinson and Elkins LLP, San Francisco, CA, Christine Hwang Yang, Law Offices of S. J Christine Yang, Fountain Valley, CA, David C. Smith, Pro Hac Vice, Lindsey R. Vaala, Pro Hac Vice, William R. Vigdor, Pro Hac Vice, Vinson and Elkins LLP, Washington, DC, Jeffrey T. Han, Pro Hac Vice, Vinson and Elkins LLP, Austin, TX, for Defendant.

### ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

CORMAC J. CARNEY, UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION AND BACKGROUND

Plaintiff Polaris Innovations Limited filed suit against defendant Kingston Technology Company, Inc. on the basis that a Kingston-produced computer memory card—model number KVR16R11D4/16—infringes on two Polaris patents, U.S. Patent No. 6,850,414 (the 414 Patent) and U.S. Patent No. 7,315,454 (the 454 Patent). Count III of Polaris's Complaint asserts infringement of the 414 Patent and Count V of the Complaint asserts infringement of the 454 Patent. (Dkt. 1.) Kingston has now moved for judgment on the pleadings, (Dkt. 79), pursuant to Rule 12(c), on Counts III and V of the Complaint, alleg-

ing that the asserted claims of the 414 Patent and 454 Patent are facially invalid, as they fail to claim patentable subject matter under 35 U.S.C. § 101.

Section 101 indicates that machines are patentable subject matter, and a long line of caselaw makes it clear that "abstract ideas" are *not* patentable subject matter. Here, both the 414 Patent and the 454 Patent pertain to the arrangement of memory chips on a computer card that fits a standard dock: by rotating some or all of the memory chips on the card 90 degrees, (1) memory chips are able to be mounted on a card with a slimmer profile (in the case of the 414 Patent), or (2) a greater number of memory chips than would otherwise be possible fit on a particular card (in the case of the 454 Patent).

The crux of the issue raised in Kingston's motion is whether the 414 Patent and the 454 Patent concern patent-eligible machines or patent-ineligible abstract ideas. Kingston argues that the patents are invalid because they merely involve the abstract idea of "adjusting the orientation of physical objects," a practice that "is part of our everyday lives and has been for millennia." Polaris counters that there is nothing at all abstract about these patents, as their claims concern particular, specific configurations of memory chips on memory cards. Having considered the parties' respective positions, the court DENIES Kingston's motion for judgment on the pleadings.[1]

## II. ANALYSIS

### A. Addressing § 101 Subject Matter Eligibility at the Pleading Stage

■ "After the pleadings are closed—but early enough not to delay trial—a par-

---

1. The Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7–15. Accordingly, the hearing set for July 25, 2016 at 1:30 p.m. is hereby vacated and off calendar.

ty may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A Rule 12(c) motion asserting failure to state a claim is governed by the same standard as a Rule 12(b)(6) motion to dismiss. *See United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011). "Patent eligibility under § 101 is a question of law that may, in appropriate cases, be decided on the pleadings without the benefit of a claim construction hearing." *Modern Telecom Sys. LLC v. Earthlink, Inc.*, No. CV 14-0347 DOC, 2015 WL 1239992, at *6 (C.D. Cal. Mar. 17, 2015) (citing *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014)).

■ In cases where claim construction is necessary to understand the subject matter of a given patent, it is proper to resolve claim construction prior to § 101 analysis. *See Bancorp Services, L.L.C. v. Sun Life Assurance Co. of Canada*, 687 F.3d 1266, 1273–74 (Fed. Cir. 2012). But in cases where the issues can be understood prior to claim construction, courts have regularly decided patent eligibility under § 101 prior to claim construction. *See, e.g., Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015); *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1360–62 (Fed. Cir. 2015). Here, neither party has argued that it is necessary to defer this decision on eligibility under § 101 until after claim construction, and given the parties' framing of the issues, it is possible to proceed with the § 101 analysis without first addressing claim construction.

## B. The § 101 Analysis the Supreme Court Set Forth in *Alice* and *Mayo*

Section 101 "defines the subject matter that may be patented under the Patent Act." *Bilski v. Kappos*, 561 U.S. 593, 601, 130 S.Ct. 3218, 177 L.Ed.2d 792 (2010). It states: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. "Section 101 thus specifies four independent categories of inventions or discoveries that are eligible for patent protection: processes, machines, manufactures, and compositions of matter." *Bilski*, 561 U.S. at 601, 130 S.Ct. 3218.

The Supreme Court found that "[i]n choosing such expansive terms … Congress plainly contemplated that the patent laws would be given wide scope," but notwithstanding this scope, the Supreme Court also identified three exceptions to § 101's broad categories of patent-eligible subject matter: "laws of nature, physical phenomena, and abstract ideas." *Diamond v. Chakrabarty*, 447 U.S. 303, 308–09, 100 S.Ct. 2204, 65 L.Ed.2d 144 (1980). These exceptions are not mentioned in the statutory text, but they are consistent with the idea that certain discoveries "are part of the storehouse of knowledge of all men" and are "free to all men and reserved exclusively to none." *Bilski*, 561 U.S. at 602, 130 S.Ct. 3218 (quoting *Funk Bros. Seed Co. v. Kalo Inoculant Co.*, 333 U.S. 127, 130, 68 S.Ct. 440, 92 L.Ed. 588 (1948)).

■ In *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, ── U.S. ──, 134 S.Ct. 2347, 189 L.Ed.2d 296 (2014), the Supreme Court further explained a two-step approach for resolving § 101 issues that it had earlier articulated in *Mayo Collaborative Servs. v. Prometheus Laboratories, Inc.*, 566 U.S. 66, 132 S.Ct. 1289, 1296–97, 182 L.Ed.2d 321 (2012). First, a court must "determine whether the claims at issue are directed to one of those patent-ineligible concepts." *Alice*, 134 S.Ct. at 2355 (citing

*Mayo*, 132 S.Ct. at 1296–97). For example, in *Bilski*, the Supreme Court rejected as patent-ineligible two claims in the petitioner's application because the claims merely "explain[ed] the basic concept of hedging, or protecting against risk," which it found to be "an unpatentable abstract idea." *Bilski*, 561 U.S. at 611, 130 S.Ct. 3218; *Alice*, 134 S.Ct. at 2355–56.

 Second, if the court finds that claims at issue are directed to patent-ineligible concepts, the court must ask "[w]hat else is there in the claims," which requires consideration of "the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Alice*, 134 S.Ct. at 2355 (citing *Mayo*, 132 S.Ct. at 1297–98). A court applies this second step of the *Mayo/Alice* analysis only if it finds in the first step that the claims are directed to a law of nature, natural phenomenon, or abstract idea. *Alice*, 134 S.Ct. at 2355. The second step requires the court to determine if the elements of the claim individually, or as an ordered combination, "transform the nature of the claim" into a patent-eligible application. *Id.* A claim may become patent-eligible when the "claimed process include[s] not only a law of nature but also several unconventional steps ... that confine[ ] the claims to a particular, useful application of the principle." *Mayo*, 132 S.Ct. at 1300.

## C. The Language of the Patents

The 414 Patent and 454 Patent claim purportedly novel layouts for computer memory cards. Polaris alleges that a particular Kingston memory module, model number KVR16R11D4/16, infringes on both patents. (Compl. ¶¶ 54, 55, 80.)

## 1. The 414 Patent

The 414 Patent, (Dkt. 1, Ex. 3), is titled "Electronic Circuit Board Having a Plurality of Identically Designed, Housing–Encapsulated Semiconductor Memories." It claims a particular type of computer memory card, and indicates that it solves the problem of reducing the height of the card while not diminishing the amount of storage available. As the 414 Patent explains, reducing the height of the cards is desirable because the cards are intended to be inserted into network computers with a slim profile. (414 Patent at 1.) The 414 Patent asserts that conventional memory cards have multiple rectangular chips mounted on them, with the long side of the rectangle perpendicular to the long edge of the card, and notes that:

> In the case of this conventional arrangement, in which the edges of the memory housings lined up along the contact strip are aligned, there is no more leeway for a further reduction of the circuit board height (the height of the printed circuit board perpendicular to the contact strip).

(414 Patent at 1–2.)

The inventors of the 414 Patent realized that the memory board height could be reduced if the memory chips on the board were oriented on the memory card horizontally rather than vertically. This horizontal orientation pertains to all chips on the board with the exception of the error correction memory chip—which must remain oriented vertically but apparently has a shorter vertical height than the other chips. It is an object of the invention to reduce the height of the printed circuit board while using standard memory housings. (414 Patent at 2.) The 414 Patent explains that this horizontal arrangement of the chips on the memory card "results in a certain, albeit small, narrowing of the printed circuit board" and that in many

cases "this suffices to actually enable the incorporation into network computers." (*Id.* at 3.)

The 414 Patent's claims describe the physical structure of the circuit board. Independent Claim 1 recites:

1. An electronic printed circuit board configuration, comprising:

an electronic printed circuit board having a contact strip for insertion into another electronic unit; and

a memory module having at least nine identically designed integrated semiconductor memories;

each one of said semiconductor memories being encapsulated in a rectangular housing having a shorter dimension and a longer dimension;

said housing of each one of said semiconductor memories being identically designed and being individually connected to said printed circuit board;

one of said semiconductor memories being connected as an error correction chip;

said longer dimension of said housing of said error correction chip being oriented perpendicular to said contact strip; and

said longer dimension of said housing of each one of said semiconductor memories, other than said error correction chip, being oriented parallel with said contact strip.

(414 Patent at 7–8.) Dependent Claims 4 and 8 add additional requirements concerning the dimensions of the circuit board:

4. The printed circuit board according to claim 1, wherein: said printed circuit board has a height of 1 to 1.2 inches perpendicular to said contact strip.

8. The printed circuit board according to claim 1, wherein: said printed circuit board has a width of 5.25 inches.

## 2. The 454 Patent

The 454 Patent (Dkt. 1, Ex. 5) is titled "Semiconductor Memory Module." Like the 414 Patent, it concerns alterations to prior art memory cards:

Due to the rising demand for memory performance, it is desired to mount an increasing number of semiconductor memory chips on an individual semiconductor memory module without increasing the area of the module or of the electronic printed circuit board in the process. Moreover, the line tracks are desired to be as short as possible to keep the signal propagation times as short as possible.

\* \* \*

The problem arises that the electronic printed circuit boards for semiconductor memory modules in industrial series production have a standard size, in the case of rectangular memory chips with a large storage capacity, e.g., DDR3–DRAM memory chips, can no longer be arranged in two rows, lying one above another. (sic)

Moreover, when arranging the memory chips, care must be taken to ensure that an arrangement is found which exhibits the occurrence of signal propagation times that are as uniform as possible to all of the semiconductor memory chips in conjunction with conductor track lengths that are, to the greatest extent possible, identical in length. Meanwhile, the conductor track lengths are also desired to be as short as possible to keep the signal propagation times as short as possible.

(454 Patent at 1–2.) The 454 Patent specification explains that by arranging the memory chips in two rows, with adjacent chips having opposite orientations, more memory chips can be fit on a memory card

of fixed dimensions. The 454 Patent's asserted claims include the following:

1. A semiconductor memory module, comprising:

an electronic printed circuit board including a contact strip that extends at a first edge of the printed circuit board along a first lateral direction and a plurality of electrical contacts disposed along the first lateral direction between two second edges that extend in a second lateral direction that is perpendicular to the first lateral direction; and

a plurality of semiconductor memory chips of substantially identical type mounted on at least one external area of the printed circuit board and having a rectangular form with a shorter dimension and a longer dimension in a direction perpendicular to the shorter dimension, the memory chips being arranged in at least two rows, each row extending, in the first lateral direction, between a center of the printed circuit board and a respective second edge, wherein the memory chips in each row are arranged in an alternating sequence of opposite orientations with the longer dimension of each memory chip being parallel with the shorter dimension of adjacent memory chips in the same row, and wherein memory chips aligned in the second lateral direction and lying in respective adjacent rows have opposite orientations.

(454 Patent at 8–9.) Asserted Dependent Claims 2, 3, 4, and 7 add further structural limitations. (454 Patent at 9–10.)

## D. Whether the Claims are Patent–Eligible under § 101

■ The stated purpose of the 414 Patent is to "make[ ] it possible to reduce the height of the printed circuit board while enabling the [memory chips] to keep the same physical form." (414 Patent at Abstract, and at 2.) The 454 Patent states that "the arrangement chosen for the semiconductor memory chips makes it possible to achieve an optimum space utilization of the entire usable area of the electronic printed circuit board." (454 Patent at 1, 3.) These patents pertain to the physical structure and layout of computer hardware. Claims that other courts have invalidated because they were "abstract ideas" under § 101 and related caselaw have instead generally focused on mental processes themselves, or software implementing those processes that is connected to generic hardware.

■ An idea is abstract if it has "no particular concrete or tangible form." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014). In contrast, a "machine," which is patent-eligible under § 101, is a "concrete thing, consisting of parts, or of certain devices and combination of devices." *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1348–49 (Fed. Cir. 2014) (quoting *Burr v. Duryee*, 68 U.S. (1 Wall.) 531, 570, 17 L.Ed. 650 (1863)). Though generic computers running code that implements abstract concepts have regularly been found to be patent-ineligible, non-generic computers are patent eligible as machines. *CLS Bank Int'l v. Alice Corp. Pty.*, 717 F.3d 1269, 1291–92 (Fed. Cir. 2013).

The parties sharply dispute whether the 414 Patent and the 454 Patent concern a machine or merely the "abstract idea" of "physically arranging objects in a confined space" dressed up through the recitation of "generic, well-known components of a semiconductor memory module." (Def.'s Br. at 5.) According to Kingston, "[p]ut simply, space optimization—the sole purported improvement claimed in the [414 Patent and the 454 Patent]—is a fundamental concept and is not patentable as a

matter of law." (Def.'s Br. at 14.) The Court, however, believes that Kingston frames the issue too generally—the patents at issue here concern physical layouts for particular memory cards that enable the card to either have a slimmer profile or have more memory chips on it than it otherwise would have had.

Though Courts in recent years have invalidated multiple computer-related patents though the application of § 101, Kingston's cited caselaw does not indicate that the Supreme Court and Federal Circuit have taken comparable action under § 101 to invalidate patents claiming ostensibly novel computer hardware designs. As the Federal Circuit explained in the context of a patent concerning a software process,

> [we] have before us not the patent eligibility of specific types of computers or computer components, but computers that have routinely been adapted by software consisting of abstract ideas, and claimed as such, to do all sorts of tasks that formerly were performed by humans. And the Supreme Court has told us that, while avoiding confusion between § 101 and §§ 102 and 103, merely adding existing computer technology to abstract ideas—mental steps—does not as a matter of substance convert an abstract idea into a machine.

*CLS Bank*, 717 F.3d at 1291–92. The Federal Circuit has additionally noted that "some improvements in computer-related technology when appropriately claimed are undoubtedly not abstract, such as chip architecture, an LED display, and the like." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016).

When determining whether a given idea is abstract, both the Supreme Court and the Federal Circuit "have found it sufficient to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish,*

*LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016) (citing *Alice*, 134 S.Ct. at 2357). Here, Kingston heavily relies on *Synopsys, Inc. v. Mentor Graphics Corp.*, 78 F.Supp.3d 958 (N.D. Cal. 2015). That case concerns a claim for a method for logic synthesis, which is the process of taking a human user's description of the design of a circuit and converting that description into a design for circuit hardware that will be used in a given chip. The *Synopsys* court explained that the claims at issue there were directed to a mental process, not a physical thing, and were therefore not patent-eligible:

> The claimed methods here at issue do not entail anything physical. Rather, as discussed above, the asserted claims are directed to the process of inference, which is fundamental to IC design and can be performed mentally. The claims describe, in essence, various algorithms for determining the hardware components and layout of an IC from a user's description of what the user needs the chip to do, i.e., the "specified signals and circumstances under which the signals are produced." ... In other words, the claims are directed to a mental process. A "mental process [is] a subcategory of unpatentable abstract ideas." *Cyber-Source Corporation v. Retail Decisions, Inc.*, 654 F.3d 1366, 1371 (Fed. Cir. 2011).

*Synopsys*, 78 F.Supp.3d at 963. But the contested claims in the instant case claim the card itself and the memory chips attached to it, not the process of arranging memory chips on a memory card in a general sense.

Kingston also focuses on *Kinglite Holdings Inc. v. Micro–Star Int'l Co. Ltd.*, No. 14–3009–JVS, Dkt. 226 (C.D. Cal. May 26, 2014), arguing that *Kinglite* stands for the general principle that claims that are merely tied to computer technology but that do not recite new "functions" for the

technology, are abstract. (Def.'s Br. at 11.) But the cited portion of *Kinglite* makes a more specific point: it cites *In re TLI Communications Patent Litigation* for the proposition that a patent is "directed to [an] abstract concept when claims are not directed to a specific improvement to computer functionality, but rather the computer unit is 'merely a conduit for the abstract idea' of classifying images and storing images based on classification." *Kinglite*, No. 14–3009–JVS, Dkt. 226 at *9 (citing *TLI*, 823 F.3d at 611–13 (Fed. Cir.2016)).

Here, however, the benefit of the 414 Patent is the slimming of the physical device itself, which enables the memory cards to be used in narrower places, and the benefit of the 454 Patent is the ability to fit more memory chips on a card. This is not a case where an inventor is trying to get around the prohibition of patenting abstract processes by tying an abstract process such as multitasking (*Kinglite* ), a

computer hardware design process (*Synopsys*), or a bingo game (*Planet Bingo*, see n.2 below) to a generic computer setup that executes that abstract idea. Rather, the hardware configuration itself is the unique focus of the patent. This fact distinguishes this case from the many cases Kingston cites in which claims were found to be patent-ineligible under § 101: those cases concerned mathematical formulas, general economic principles, business practices, and other mental processes—either themselves or as performed on a generic computer—not the design of the hardware itself.[2] Kingston has not, however, cited any case where a court found that a claim for a purportedly novel physical configuration of a piece of computer hardware was deemed patent-ineligible because it was merely the embodiment of an abstract process.

Kingston argues that the 414 Patent and the 454 Patent do not modify any of the

---

**2.** *See, e.g., Bancorp Services*, 687 F.3d 1266 (Fed. Cir. 2012) (administering and tracking life insurance policies); *Bilski*, 561 U.S. 593, 130 S.Ct. 3218 (2010) (price hedging); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350 (Fed. Cir. 2014) (guaranteeing performance of an online transaction); *Clear with Computers, LLC v. Altec Indus.*, No. 14-89, 2015 WL 993392 (E.D. Tex., Mar. 3, 2015) (creating a sales proposal); *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343 (Fed. Cir. 2014) (method of extracting and storing information from hard copy documents); *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366 (Fed. Cir. 2011) (method and system for detecting fraud in an online credit card transaction); *Dealertrack, Inc. v. Huber*, 674 F.3d 1315 (Fed. Cir. 2012) (managing a credit application); *Digitech*, 758 F.3d 1344 (organizing information through "mathematical correlations ... not tied to a specific structure or machine"); *In re Brown*, 645 Fed.Appx. 1014 (Fed. Cir. 2016) (hair cutting); *In re Comiskey*, 554 F.3d 967 (Fed. Cir. 2009) (arbitration); *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607 (Fed. Cir. 2016) (classifying, organizing, and storing digital images using generic computer

hardware); *Intellectual Ventures I, LLC v. Motorola Mobility LLC*, 81 F.Supp.3d 356 (D. Del. 2015) (distributing software updates to a computer); *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343 (Fed. Cir. 2015) (retaining information lost in the navigation of online forms); *Joao Control & Monitoring Sys., LLC v. Telular Corp.*, 173 F.Supp.3d 717, 726 (N.D. Ill. 2016) ("monitoring and controlling property and communicating this information through generic computer functions"); *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359 (Fed. Cir. 2015) (price optimization); *Planet Bingo, LLC v. VKGS LLC*, 576 Fed.Appx. 1005 (Fed. Cir. 2014) (bingo game management); *Thales Visionix, Inc. v. United States*, 122 Fed.Cl. 245 (2015) (mathematical equations for determining the relative position of moving objects); *Ultramercial*, 772 F.3d 709 (Fed. Cir. 2014) (distributing copyrighted media over the internet to viewers in exchange for watching advertisements); *Wireless Media Innovations, LLC v. Maher Terminals, LLC*, 100 F.Supp.3d 405 (D.N.J. 2015) (monitoring and recording location and load status of shipping containers using generic computer equipment).

conventional computer memory chips and connecting hardware recited in the asserted claims. This appears to be correct—the patents at issue here assert ways to more efficiently lay out those components in order to minimize the height of the memory card (414 Patent) or maximize the number of memory chips on the card (454 Patent). Kingston further asserts that because the patents to not modify any of the conventional computer components themselves, they "do not describe or claim any technical improvement to the <u>functioning</u> of memory modules, memory chips, or error correction chips—the claimed memory modules function just as the admitted conventional memory modules did." (Def.'s Reply Br. at 7.) But though these individual components themselves function as they otherwise would, the two Polaris patents document performance improvements of the assembled devices insofar as the 414 Patent enables a memory card to maintain the same functionality in a slightly smaller space and the 454 Patent enables more of those components to fit into the same space. The patents thus claim the enhanced performance of the memory cards themselves—their performance relative to the size of their footprint is enhanced.

In contrast, the cases Kingston cites as examples of patent-ineligible claims involving computer hardware all involve patented *processes* running on what the courts found to be generic hardware. This Court concludes that the distinction is a significant one, and that it is dispositive on the issue raised in Kingston's motion. Because the 414 Patent and the 454 Patent pertain to machines as opposed to abstract processes, there is no need to proceed to the second step of the *Alice/Munro* analysis—they describe patentable subject matter under § 101.

It may later be determined that the claims in Polaris's 414 Patent and 454 Patent are unfit for patent protection because they fail to satisfy the statutory conditions of novelty under § 102 or non-obviousness under § 103. But a rejection of the patents on either of these grounds is of course premature here, and would not affect the determination that Polaris's patents do indeed recite subject matter that is eligible for patent protection under § 101.

## III. CONCLUSION

For the foregoing reasons, Kingston's motion for judgment on the pleadings is DENIED.